UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| VALERIE OVERTON, mother and next friend of CHAMBRIA OVERTON, and CHAMBRIA OVERTON, individually, </br></br>    Plaintiffs </br></br> v. </br></br> HAMILTON COUNTY, TENNESSEE, and MITCHEL SMITH, individually and in his official capacity, </br></br>    Defendants. | Case No. 1:08-CV-278 </br></br> Chief Judge Curtis L. Collier |

## **MEMORANDUM**

Before the Court is a motion for summary judgment filed by Defendants Hamilton County, Tennessee, and Hamilton County Sheriff's Deputy Mitchel Smith (Court File No. 6) and supporting memorandum (Court File No. 7). On the day Plaintiffs Valerie Overton and Chambria Overton's response was due, Plaintiffs' counsel filed a motion and supporting affidavit for extension of time to respond to the motion for summary judgment, asserting he had "recently had medical issues" which had prevented him from completing his response, and requesting an extension of seven days (Court File No. 8). Though Plaintiffs' counsel represented he had attempted to reach Defendants' counsel regarding the extension, the Court saw no response from Defendants. The seven days requested by Plaintiff's counsel have passed, even excluding intervening weekend days, without a response from Plaintiffs. Thus, the Court will consider Defendants' motion without benefit of Plaintiffs' response. *See* E.D.TN. LR7.2 ("Failure to respond to a motion may be deemed a waiver of any opposition to the relief sought.") For the following reasons, the Court will **GRANT** Defendants' motion for summary judgment and will **DISMISS** the case.

I.  **RELEVANT FACTS AND PROCEDURAL HISTORY**

Plaintiff Chambria Overton was a student at Tyner Academy, a public high school in Chattanooga, Tennessee. Defendant Mitchel Smith was a deputy with the Hamilton County Sheriff's Office assigned to Tyner Academy as its School Resource Officer. On November 7, 2007, Overton was involved in an altercation with another student. Vice Principal Julius Hargrove asked Smith to retrieve Overton and the other student from the school's lunch room and bring them to Smith's office to mediate the conflict. According to Smith's deposition, Overton became "agitated" when Smith arrived, became "obviously hostile" to his presence, and started exhibiting "furtive movements." (Court File No. 6 Ex. B (Smith Dep.), at 17–18.) Smith informed Overton she would need to accompany him, and she and the other student followed Smith to his office. Hargrove was present in the office, waiting for the three.

After they arrived at Smith's office, Overton and the other student entered into a verbal argument when Hargrove started asking questions about the altercation, and Hargrove instructed both girls they needed to be quiet, calm down, and speak one at a time.[1] The other student then attempted to explain her version of events; Smith testified that "[a]nytime she tried to say her part of the story, Chambria would butt in and would get more and more elevated, more and more the loudness of her voice. Several times she used the 'f' word." (*Id.* at 22.) After using that word again, Smith instructed Overton that if she continued to use that language, he would put her in jail for disorderly conduct. Overton responded along the lines of "Go ahead and arrest me. I've been

---

[1]Smith testified he understood his role while in the office to be "what I thought was a mediator or just to keep the peace while [Hargrove] talked to them. . . . So, I just sat behind my desk listening to their conversation." (Court File No. 6 Ex. B, at 21.)

there." (*Id.* at 23.) When the conversation resumed, Overton repeated the word; Smith stood up and told Overton, "That's it. You're going to jail." (*Id.*) Overton responded by screaming, yelling "Get the 'f' off me, I'm pregnant," backing up into a corner, and crossing her arms in front of her. (*Id.* at 23–24.)

In the meantime, a large crowd of students had gathered around the door of the office; Hargrove attempted to disperse the crowd. Smith continually asked Overton to put her hands behind her back for arrest; Overton refused. Because Overton was jerking away from Smith, Smith took Overton into a controlled fall to the floor. Smith was able to put one of Overton's hands in handcuffs, but because Overton would not put her other hand behind her back, Smith used pepper spray, which allowed Smith to handcuff her other hand. Smith testified he gave consideration to the amount and type of force he used because Overton was pregnant at the time (*id.* at 25) and because she was "quite large" (*id.* at 27). Smith took Overton to his police car, during which she still physically struggled with Smith and "bounced off the door several times trying to get through the door" (*id.* at 28), to the point that Smith had to use "a pretty good bit of leverage trying to move her, because she was resisting" the entire way to the police car (*id.* at 29). During the altercation with Smith, Overton broke one of her fingers.

Plaintiffs filed suit in the Circuit Court of Hamilton County, Tennessee, stating claims under 42 U.S.C. §§ 1983, 1985, and 1988 for federal constitutional violations (the Fourth, Eighth, and Fourteenth Amendments), Tennessee constitutional violations, and statutory and common law state claims. On December 3, 2008, Defendants removed the case to this Court (Court File No. 1).

## II. STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the burden rests on the movant to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court must view the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). It is the Court's duty to determine if the non-movant has presented sufficient evidence to raise issues of fact; however, the Court does not weigh evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Weaver v. Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

At the same time, the purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Fed. R. Civ. P. 56 (advis. comm. notes) (1963). The movant must demonstrate the absence of a genuine issue of material fact, but the non-movant is not entitled to a trial solely on the basis of its allegations. The non-movant must submit significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324. A scintilla of evidence is not enough; the non-movant must present evidence sufficient for a jury to reasonably find for its side. *Liberty Lobby*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The movant is entitled to summary judgment if the non-movant fails to make a satisfactory showing on an essential element of its case for which it bears the burden of proof. *Celotex*, 477 U.S. at 323. It is the Court's role to decide if a fair-minded jury could return a verdict

4

for the non-moving party, or if "the evidence . . . is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

**III.  DISCUSSION**

Defendants argue Deputy Smith is entitled to qualified immunity, and also argue Hamilton County is entitled to summary judgment. The Court addresses each Defendant in turn.

**A.  Deputy Smith**

Defendants argue Deputy Smith is entitled to qualified immunity because he did not violate Overton's constitutional rights. Under the doctrine of qualified immunity, "government officials performing discretionary functions, generally are shielded from liability from civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The determination of qualified immunity requires a two-step analysis, and a court may analyze the steps in either order. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). The court must determine (1) whether, viewing the facts in the light most favorable to the plaintiff, there was a violation of the plaintiff's constitutional right(s), and (2) whether the right was clearly established to a reasonable person, such that its violation would be objectively unreasonable. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006).

Plaintiffs claim Deputy Smith used excessive force in effecting Overton's arrest, in violation

of the Fourth Amendment.[2]  In evaluating Fourth Amendment excessive force claims, the Court employs an "objective reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 388 (1989).  This standard requires that the use of force in making an arrest be reasonable under the circumstances.  *Id.* at 395.  It is a fact-based inquiry, focusing on several factors such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.  A court must judge the "reasonableness" of a particular use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.*  Finally,

> [w]ith respect to a claim of excessive force, the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97 (internal citations omitted).

Here, Deputy Smith was confronted with a student who was repeatedly cursing despite being told to desist, yelling loudly enough to draw a crowd outside Hargrove's office, and was interrupting any of Hargrove and the other student's attempts to have a discussion.  When told if she did not cease her use of offensive language, she would be placed under arrest for disorderly conduct, Overton did not cease; on the contrary, she became more belligerent and refused to cooperate.  After Deputy Smith made the decision to arrest her, Overton backed into a corner, folded her arms across

---

[2]Claims for excessive force are properly brought under the Fourth Amendment, not the Eighth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 388 (1989).  The Eighth Amendment applies "as the primary source of substantive protection" only after conviction.  *See Whitley v. Albers*, 475 U.S. 312, 327 (1986).  As such, the Court will analyze Plaintiff's excessive force claim under the relevant Fourth Amendment standard.

her chest, and refused to place her hands behind her back. At that point, some level of force became necessary to effectuate the arrest in the face of a physically resistant suspect. Deputy Smith testified he took into account the fact Overton was pregnant in deciding how much force to use. After unsuccessful attempts to place handcuffs on her, Deputy Smith used pepper spray to gain her complaiance, and took Overton to the ground in a controlled fall. Even after these uses of force, Overton continued to physically resist Smith as he took her to his police car. In view of these circumstances, the Court cannot say Deputy Smith's use of force was unreasonable.

Accordingly, and given the lack of any evidence to the contrary, a reasonable jury could not find Deputy Smith violated Overton's constitutional rights. Thus, the Court need not reach the second step of the qualified immunity analysis, and will **GRANT** qualified immunity (and hence summary judgment) to Deputy Smith.

B. **Hamilton County**

Defendants move for summary judgment on Plaintiffs' federal claims against Hamilton County, arguing there is no factual basis for a failure to train claim, or for deliberate indifference caused by an unconstitutional policy, custom, or practice.

"[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).[3] Plaintiffs have the burden to "show[] that the unconstitutional policy or custom

---

[3]For this reason, Defendants are correct in arguing Hamilton County cannot be held liable under § 1983 on a theory of respondeat superior, to the extent Plaintiffs attempt to do so. *Monell*, 436 U.S. at 694 ("We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.").

7

existed, that the policy or custom was connected to the county, and that the policy or custom caused [the] constitutional violation." *Napier v. Madison County, Ky.*, 238 F.3d 739, 743 (6th Cir. 2001). Plaintiffs have adduced no such proof here. There is nothing in the record to suggest Hamilton County had in place a policy or custom concerning in-school arrests of high school students, let alone to suggest such a policy or custom was unconstitutional.

For related reasons, Plaintiffs' failure to train claim must also fail. While a plaintiff can show that a municipality's failure to train or supervise its employees demonstrates deliberate indifference to the rights of person with whom police will have contact, such that it effectively constitutes a government custom or policy, *City of Canton v. Harris*, 489 U.S. 378, 388 (1989), to do so, the plaintiff must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences," *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). "'[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410 (1997)). Again, Plaintiffs have not provided any proof to meet this stringent standard in this case. Accordingly, Plaintiffs' § 1983 claims must fail.

As for Plaintiffs' state law claims, under the Tennessee Governmental Tort Liability Act, a municipality retains immunity from suit when an injury arises out of "civil rights," Tenn. Code Ann. § 29-20-205(2), which includes federal civil rights laws like § 1983 and the U.S. Constitution, *Hale v. Randolph*, No. 1:02-CV-334, 2004 WL 1854179, at *17 (E.D. Tenn. Jan. 30, 2004). That is, "immunity from suit of all governmental entities is removed or waived for injury proximately caused by a negligent act or omission of any employee within the scope of his employment *except* if the

8

injury arises out of 'civil rights.'" *Id.* (emphasis added). Thus, Hamilton County retains immunity to the extent Plaintiffs' claims against it sound in negligence. Further, Hamilton County is immune from the intentional torts Plaintiffs have asserted. Again, as in *Hale*, Plaintiffs' intentional tort claims "clearly arise out of and directly flow from the allegations that the police officer[] deprived" Overton of her civil rights. *Id.* Lastly, Plaintiffs' Tennessee constitutional claims fail because the Tennessee Constitution contains no implied private cause of action. *Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999).

Accordingly, the Court will **GRANT** summary judgment to Defendant Hamilton County.

## IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendants' motion for summary judgment and will **DISMISS** this case.

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**

9